UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LISA HILLIARD, ET AL.                                          CIVIL ACTION

VERSUS

TIKI TUBING, LLC                                              NO. 22-00310-BAJ-RLB

<u>RULING AND ORDER</u>

This is a wrongful death and survival action. Plaintiffs allege that Defendant Tiki Tubing, LLC's negligence resulted in the death of their husband and father, Keith Hilliard. (*See* Doc. 1, ¶ 7). Despite timely service, Defendant has failed to file an answer, enroll Counsel, or otherwise defend this lawsuit.

Now before the Court is Plaintiffs' **Motion for Default Judgment (Doc. 14),** which moves the Court to enter a default judgment against Defendant pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(2). For the written reasons herein, the Motion is granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Alleged Facts

Plaintiffs Lisa, Christian, JaBori, and Ma'Khail Hilliard are the wife and children of Keith Hilliard, the decedent. (*See* Doc. 1, ¶¶ 1–4). Defendant Tiki Tubing, LLC is a business that provides flotation tubes for customers on the Amite River. (*See* Doc. 14-1 at p. 1). For Father's Day 2021, the Hilliard family decided to go tubing on the Amite River. (*See* Doc. 1, ¶ 11). On a date not provided in the pleadings, Mrs. Hilliard contacted Defendant "with questions about the safety of the tubing experience." (*d.*). When she called, Mrs. Hilliard told Defendant's unnamed employee

1

that her husband could not swim and asked if tubing on the river would be safe for him. (*See id.*). She also asked whether life jackets were provided. (*See id.*). Defendant's employee "assured Mrs. Hilliard that the Amite River was safe and shallow, and that if anyone were to fall out of their tube they needed to only stand-up because the water depth in the river was waist-deep or less." (*Id.*). Defendant's employee "further told Mrs. Hilliard that life jackets were available for children only, but that life jackets were not needed for adults because of the shallow depth of the river." (*Id.*).

On June 19, 2021, relying on Defendant's statements and assurances, Plaintiffs and Mr. Hilliard decided to go tubing on the Amite River. (*See id.*, ¶ 12). Upon arrival at Defendant's facility, the family boarded a bus that took them up-river. (*See id.*, ¶ 13). "No life jackets were provided, and no safety instructions were provided." (*Id.*).

After disembarking the bus, Plaintiffs and Mr. Hilliard were provided tubes and shown to the location to enter the Amite River. Mr. Hilliard sat on his tube and floated away from the riverbank. (*See id.*, ¶ 14). "Within minutes, Mr. Hilliard fell out of his tube into the river." (*Id.*, ¶ 15). Contrary to Defendant's representations, the river's depth was more than six feet, and Mr. Hilliard was unable to stand. (*See id.*). He became submerged. (*See id.*). Plaintiffs, along with several bystanders who are not parties in this lawsuit, began to search for Mr. Hilliard. (*See id.*). "When he was eventually found, he was unconscious, non-responsive, and dragged to land.

2

Prolonged attempts at resuscitation were unsuccessful, and Mr. Hilliard died." (*Id.*). The cause of death was "asphyxia due to drowning." (Doc. 14-6).

On July 3, 2021, Plaintiffs held Mr. Hilliard's funeral, which incurred expenses of $15,212. (*See* Doc. 14-7 at p. 1; Doc. 12-2, ¶ 11).

### B. Procedural History

On May 13, 2022, Plaintiffs sued Defendant for the wrongful death of Mr. Hilliard. (Doc. 1). They allege that Defendant's negligence and misrepresentations caused his death and seek, *inter alia*, survival damages, loss of earnings and earning capacity, and medical expenses. (*See* Doc. 1, ¶ 16-18). Defendant was served with Plaintiffs' Complaint on July 17, 2022, but it has failed to answer, enroll Counsel, participate in any Court proceedings, or otherwise defend this lawsuit.

On August 15, 2022, Plaintiffs moved for a Clerk's entry of default, which was entered against Defendant on August 17, 2022, pursuant to Rule 55(a). (Docs. 8, 9). On September 19, 2022, Plaintiffs filed the instant motion for default judgment under Rule 55(b)(2). (Doc. 14). On May 30, 2023, the Court ordered Plaintiffs to submit additional briefing limited to the issue of damages, (Doc. 18), and on July 20, 2023, the Court held an evidentiary hearing limited to the issue of Plaintiffs' damages, (Doc. 21). Thereafter, the Court took the matter under advisement. (*Id.*). This Order follows.

## II.    LEGAL STANDARD

Rule 55(b)(2) authorizes a district court to enter a default judgment against a party who has failed to a plead or otherwise defend. *See* FED. R. CIV. P. 55. To obtain

a default judgment, the United States Court of Appeals for the Fifth Circuit has adopted a three-step process. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party has failed to plead or otherwise defend against an action. FED. R. CIV. P. 55(a). Next, an entry of default must be entered by the clerk when the default is shown "by affidavit or otherwise." *See id.*; *New York Life*, 84 F.3d at 141. Third, a party may apply to the court for a default judgment after an entry of default. *See* FED. R. CIV. P. 55(b); *New York Life*, 84 F.3d at 141.

After a party files for a default judgment, courts must apply a two-part process to determine whether a default judgment should be entered. First, the Court must ascertain if the entry of default judgment is procedurally justified. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Several factors are relevant to this inquiry, including: (1) whether there are material issues of fact; (2) whether there has been substantial prejudice; (3) whether the grounds for default have been clearly established; (4) whether the default was caused by excusable neglect or good faith mistake; (5) the harshness of the default judgment; and (6) whether the court would think itself obliged to set aside the default on a motion by defendant. *See id.* Default judgments are disfavored due to a strong policy in favor of decisions on the merits and against resolution of cases through default judgments. *See id.* Default judgments are available only when the adversary process has been halted because of an essentially unresponsive party. *See Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citation omitted).

Second, the Court must determine whether the plaintiff's complaint sufficiently sets forth facts establishing that it is entitled to relief. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). "[T]he Court must accept the well-pleaded factual allegations in the plaintiff's complaint." *Meyer v. Bayles*, 559 F. App'x 312, 313 (5th Cir. 2014) (internal citations omitted). "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206.

Once the process is complete, the Court must determine what form of relief Plaintiff should receive. *See United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F.Supp.2d 381, 384 (W.D. Tex. 2008). A defaulting defendant "concedes the truth of the allegations of the Complaint concerning defendant's liability, but not damages." *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, *4 (S.D. Tex., Oct. 5, 2011). Generally, "damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts." *J & J Sports Prods, v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814; *See also United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

## III.  ANALYSIS

### A. Default Judgment Is Procedurally Justified

Here, the *Lindsey* factors support entering a default judgment against Defendant. First, Defendant has failed to appear and offer its own countervailing facts, evidence, or arguments. Thus, there are no issues of material fact for the Court's consideration. Second, Plaintiffs have been substantially prejudiced by Defendant's

refusal to participate in this lawsuit. Obviously, the adversarial system requires an adversary to proceed. Third, Defendant's failure to defend the suit clearly establishes the grounds for default. Fourth, nothing before the Court suggests that the default was caused by good-faith mistake or excusable neglect. Fifth, default judgment is not overly harsh in this case given the seriousness of Plaintiffs' allegations and Defendant's failure to oppose them. Finally, nothing before the Court demonstrates that it would be obliged to set aside default on motion by Defendant.

### B. Plaintiffs' Complaint Establishes a Viable Claim for Relief

The Court must now determine whether Plaintiffs' factual allegations in the Complaint, accepted as true, provide a sufficient basis for judgment in Plaintiff's favor. *Nishimatsu Const.*, 515 F.2d at 1206. Plaintiffs accuse Defendant of, among other things, "falsely assuring its customers who could not swim that the Amite River was safe and that life jackets were not necessary or required because of the alleged shallow river depth; misrepresenting the true depth of the Amite River to its customers; and misrepresenting the safety hazards presented by the Amite River." (*See* Doc. 1, ¶ 16). "The elements of a Louisiana action based on negligent misrepresentation resulting in physical harm appear to be: (a) a negligent misrepresentation or giving of false information to another, and (b) foreseeable action taken by the other in reasonable reliance on such information, (c) which results in physical harm to the other or to a third person who reasonably could be expected to be put in peril by the action taken." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 627 (5th Cir. 1999) (internal citations omitted).

Here, Plaintiffs have alleged facts that, taken as true, establish Defendant's liability and Plaintiff's right to recover on the negligent misrepresentation claim. They allege that Defendant's employee falsely told Mrs. Hilliard that the Amite River was shallow—waist-deep or less—and safe for adults without a life jacket. Reasonably relying on these assurances, Plaintiffs and Mr. Hilliard engaged in inner tubing facilitated by Defendant. It was eminently foreseeable that, in the course of an inner tubing excursion, Mr. Hilliard may fall into the water, and that if that water was deeper than the depth claimed by Defendant, Mr. Hilliard would be endangered. Ultimately, Mr. Hilliard's death was the direct result of precisely the peril that Defendant falsely represented did *not* exist. Accordingly, Plaintiffs' Complaint establishes a viable claim for relief.

## C. Damages

A defaulting defendant "concedes the truth of the allegations of the Complaint concerning defendant's liability, but not damages." *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, *4 (S.D. Tex., Oct. 5, 2011). Articles 2315 and 2316 of the Louisiana Civil Code provide that every person is responsible for all damages caused by his fault or negligence. *See* La. Civ. Code arts. 2315, 2316; *Pitre v. Louisiana Tech Univ.*, 673 So.2d 585, 589 (La. 5/10/96). Generally, "[d]amages must be proven by a hearing or a demonstration of detailed affidavits establishing the necessary facts." *Joe Hand Promotions, Inc. v. Alima*, No. 3:13-CV-0889-B, 2014 WL 1632158, at *3 (N.D. Tex. Apr. 22, 2014) (*citing United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

In this action, Plaintiffs are requesting survival action damages, wrongful death action damages, loss of future earnings, funeral expenses, and bystander damages. (*See* Doc. 20 at pp. 3–9). In support, Plaintiffs have submitted detailed affidavits establishing their damages (Docs. 14-2, 14-3, 14-4, and 14-5), and a memorandum outlining all the damages to which they believe they are entitled. (Doc. 20). In addition, at the July 20 hearing, the Court took testimony from Plaintiffs regarding the various categories of damages described in the Complaint. (Doc. 21).

### i. Survival Action Damages

The Court "may award damages for pain and suffering in a survival action where there is the smallest amount of evidence of pain, however brief, on the part of the deceased." *Etcher v. Neumann*, 2000-2282 (La. App. 1 Cir. 12/28/01), 806 So. 2d 826, 840. "In determining survival damages, the court should consider the severity and duration of any pain or any pre-impact fear experienced by the deceased, and any other damages sustained by the deceased up to the moment of death." *Leary v. State Farm Mut. Auto. Ins. Co.*, 2007-1184 (La. App. 3 Cir. 3/5/08), 978 So. 2d 1094, 1098. In addition to the decedent's pain or suffering, "fright, fear, [and] mental anguish during an ordeal leading to the death is compensable." *Leary*, 978 So. 2d at 1098 (internal citations omitted).

Plaintiffs seek survival damages based on the "almost unimaginable" physical and emotional pain and trauma that Mr. Hilliard experienced during the 10–15 minutes he remained submerged. (*See* Doc. 20 at p. 4). Further, Plaintiffs claim that that Mr. Hilliard's "fear of his impending death would have been compounded by the

8

thought that he was accompanied by his wife and children *on Father's Day*." (*See id.*) (emphasis in original). Plaintiffs also stated, however, that when "Mr. Hilliard was eventually found, he was unconscious, non-responsive, and dragged to land." (*See* Doc. 20 at p. 2).

Faced with a similar situation to that at issue here, where there is "no evidence in the record that [Mr. Hilliard] was conscious at the scene" following his rescue from the river, the Louisiana First Circuit Court of Appeals awarded $300,000 in survival damages, explaining that the decedent "would have been frightfully aware that he was likely to die or suffer serious injury" at the moment of his accident. *Maldonado v. Kiewit Louisiana Co.*, 2012-1868 (La. App. 1 Cir. 5/30/14), 152 So. 3d 909, 936, *writ denied*, 2014-2246 (La. 1/16/15), 157 So. 3d 1129. The evidence supports the same finding here: Mr. Hilliard undoubtedly would have been terrified that he was likely to die or suffer serious injury at the moment he fell out of the inner tube and realized that the river was deeper than warranted. Guided by *Maldonado*, the Court determines that Plaintiffs are entitled to an award of $300,000 in survival damages.

### ii. Wrongful Death Action Damages

"Wrongful death claims do not arise until the victim dies, and they are meant to compensate the designated survivors for their loss of the decedent." *Maldonado*, 152 So. 3d at 938 (*citing* La. Civ.Code art. 2315.2). "The elements of the award for wrongful death include loss of love, affection, companionship, support, and funeral expenses." *Maldonado*, 152 So. 3d at 938 (internal citations omitted).

9

At the July 20 hearing Mrs. Hilliard testified that she met Mr. Hilliard when she was 18 years old. They dated for six years, were married in 1995, and had a loving marriage for 26 years until his death. It is clear that Mr. and Mrs. Hilliard had a loving and close relationship. Mrs. Hilliard testified that he was her best friend. They had three sons, Christian, JaBori, and Ma'Khail. Mr. Hilliard worked for Shell as a service processor to support his family. He was 53 years old when he died. Since losing him, Mrs. Hilliard has experienced suicidal ideation, and was diagnosed with severe PTSD, anxiety, and insomnia, and is currently in counseling.

Christian, JaBori, and Ma'Khail also testified at the July 20 hearing and described the loving relationships they each enjoyed with their father. Each son described him as an amazing dad and family man who also coached them in baseball and football as kids. As adults, the Hilliard sons remained very close to their father. They frequently vacationed as a family, attended church together, and saw each other weekly. Christian testified that he works at a chemical plant because his father did. The pair frequently enjoyed outdoor activities together, including grilling and playing sports. They also played dominoes together and spoke on the phone all the time. JaBori is also a father and testified that his father instructed him on how to be a good one. They spoke regularly and attended football and baseball games together. Ma'Khail testified that he chose to attend Louisiana State University to remain close to his father and has tried to emulate his father by also coaching kids. At the time of Mr. Hilliard's death, Ma'Khail was still financially dependent on him. Since losing their father, Christian, JaBori, and Ma'Khail have also attended counseling.

Based on Plaintiffs' testimony, the Court awards Mrs. Hilliard $1 million in wrongful death damages. *See Maldonado*, 152 So. 3d at 938 (comparing damages awards for surviving spouses ranging from $500,000 to $1 million). Christian and JaBori, who were adult children at the time of Mr. Hilliard's death and no longer dependent upon him for support, are each awarded $500,000 in wrongful death damages. *See Glaser v. Hartford Fire Ins. Co.*, 2022-0534, 2023 WL 5601325, *10 (La. App. 1 Cir. 8/30/23) (awarding $500,000 in wrongful death damages to adult children who were no longer members of the decedent's household or financially dependent on the decedent). Because Ma'Khail was still financially dependent on Mr. Hilliard, he is awarded $750,000. Finally, Plaintiffs are awarded $15,212 in funeral expenses.

### iii.  Economic Loss

"Awards for loss of support include loss of support from the date of death to the date of trial and loss of future support from the date of trial through the length of the decedent's work-life expectancy." *Maldonado*, 152 So. 3d at 940 (*citing Brossett v. Howard*, 2008–535 (La. App. 3rd Cir.12/10/08), 998 So.2d 916, 932). "Factors to be considered in determining a proper award for lost future income are the decedent's physical condition before his death, the decedent's past work history and consistency thereof, the amount the decedent probably would have earned absent the death, and the probability that the decedent would have continued to earn wages over the remainder of his working life." *Id.*

Plaintiffs retained Ralph A. Litolff, Jr., a certified public accountant who has previously been qualified as an expert in forensic economics in numerous state and

federal courts, to determine the economic losses they've sustained from Mr. Hilliard's death. (*See* Doc. 20-1 at p. 1). According to Mr. Litoff's unrebutted report, Mr. Hilliard was employed full-time by Shell Geismar as a process operator and had an annual earnings base of $127,780. (*See id.* at pp. 4–7). Mr. Litolff calculated the past and future total loss of support and total loss of production of household services from Mr. Hilliard's death to be $1,592,910. In his analysis, Mr. Litolff considered Mr. Hilliard's employment status, age, and work-life expectancy, which are all factors properly considered. Accordingly, Plaintiffs are awarded $1,592,910 in economic loss damages.

### iv.  Bystander Damages

Bystander damages—or *Lejeune* claims—arise "when a person observes an injury-causing event or soon after comes upon the scene of an injury and is contemporaneously aware that the event has caused severe harm to the direct victim." *Castille v. Louisiana Med. Mut. Ins. Co.*, 2014-519 (La. App. 3 Cir. 11/5/14), 150 So. 3d 614, 618. *See also Lejeune v. Rayne Branch Hosp.*, 556 So. 2d 559, 571 (La. 1990). *Lejeune* claims are governed by Louisiana Civil Code Article 23.15.6. "To recover under this article, a plaintiff must show that: (1) they viewed the event causing injury to the direct victim or came upon the scene soon after; (2) the direct victim suffered such harm that it can reasonably be expected that the plaintiff would suffer serious mental anguish from the experience; (3) the emotional distress plaintiff sustained is both serious and reasonably foreseeable; and (4) plaintiff and the direct victim have the requisite familial relationship." *See Castille*, 150 So. at 619–20.

Here, each Plaintiff satisfies the elements of a *Lejeune* claim. Mrs. Hilliard, Christian, and JaBori were all present during Mr. Hilliard's drowning and participated in the rescue efforts. Ma'Khail testified that he arrived at the scene about 30 minutes after the accident and saw his father's body. Mr. Hilliard's drowning on Father's Day can be reasonably expected to cause severe mental anguish to his wife and children, and the Plaintiffs' testimony conveys the seriousness of their emotional distress. As previously discussed, Mrs. Hilliard experienced suicide ideation and was diagnosed with severe PTSD, anxiety, and insomnia. Christian, JaBori, and Ma'Khail have daily dreams about their dad and the events of Father's Day weekend 2021. Finally, as Mr. Hilliard's spouse and children, Plaintiffs have the requisite familial relationship with the deceased. *See* La. Civ. Code art. 2315.6(A)(1). Consequently, Mrs. Hilliard, Christian, and JaBori are each awarded $75,000 in bystander damages. Ma'Khail, who arrived at the scene shortly after Mr. Hilliard drowned, is awarded $50,000. *See Maldonado*, 152 So. 3d at 940 n.17 (comparing bystander damages ranging from $50,000 to $150,000).

## IV.  CONCLUSION

In sum, the Court finds that Plaintiffs are entitled to the following damages:

| | |
|---|---|
| Survival action damages: | $300,000 |
| Wrongful death action damages | |
|     Lisa Hilliard: | $1,000,000 |
|     Christian Hilliard: | $500,000 |
|     JaBori Hilliard: | $500,000 |

| | |
|---|---|
| Ma'Khail Hilliard: | $750,000 |
| Funeral Expenses: | $15,212 |
| Economic Loss: | $1,592,910 |
| Bystander (*Lejeune*) damages | |
| Lisa Hilliard: | $75,000 |
| Christian Hilliard: | $75,000 |
| JaBori Hilliard: | $75,000 |
| Ma'Khail Hilliard: | $50,000 |
| **TOTAL:** | **$4,933,122** |

Accordingly,

**IT IS ORDERED** that Plaintiffs' **Motion for Default Judgment (Doc. 14)** be and is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that a default judgment in favor of Plaintiffs and against Defendant be and is hereby **ENTERED**, establishing that Defendant is liable to Plaintiffs for the wrongful death of Keith Hilliard.

Judgment shall issue separately.

Baton Rouge, Louisiana, this _____ day of September, 2023

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

14